IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| LINDSEY LOMBARDO and BRYAN CHILDRESS,<br><br>    *Plaintiffs*,<br><br>v.<br><br>LEE RILEY, THOMAS CHAPMAN, and the GOVERNMENT of TIPTON COUNTY, TENNESSEE,<br><br>    *Defendants*. | Case No._____ |

## COMPLAINT FOR DAMAGES AT LAW

## I.
## PRELIMINARY STATEMENT

This action arises from the unlawful seizure and taking of two pet dogs—including one, ironically enough, named Cruella. Two agents of Tipton County Animal Control ("Animal Control") removed the dogs from Plaintiffs' private property without statutory authority or judicial process, then held one of the dogs for thirty-four days. Such action constituted an unlawful seizure, in violation of the Fourth Amendment, and a taking of property without due process, in violation of the Fourteenth Amendment. Plaintiffs seek damages for those violations under 42 U.S.C. § 1983 ("Section 1983"). In addition to their Section 1983 claims against the individual Animal Control agents, Plaintiffs seek damages against the Tipton County Government under Section 1983 and *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978), because the Animal Control agents seized the dogs under a local ordinance—Tipton County's official policy— that purports to grant seizure authority beyond any police power conferred on local governments

by state law. Plaintiffs also plead pendant state-law claims for common-law conversion and negligence.

**II.**
**JURISDICTION AND VENUE**

1. This Court has original subject-matter jurisdiction, under 28 U.S.C. §§ 1331 and 1343(a), to hear and adjudicate Plaintiffs' federal claims.

2. 28 U.S.C. §§ 1331 and 1343(3), (4) give this Court jurisdiction to adjudicate state-law claims pendent to the federal claims in this action.

3. The unlawful seizure that gives rise to the claims below occurred on July 6, 2023. Under Tennessee's one-year statute of limitations, and because July 6, 2024, fell on a Saturday, Plaintiff's deadline to file this action runs Monday, July 8, 2024. *See* Fed. R. Civ. P. 6(a)(1)(c).

4. This Court provides proper venue under 28 U.S.C. § 1391(b) because the claims asserted in this action arose from events that occurred in the Western District of Tennessee.

**III.**
**PARTIES TO THE ACTION**

5. Plaintiff Lindsey Lombardo is, and at all pertinent times was, a citizen of the United States and resident of Tipton County, Tennessee.

6. Plaintiff Bryan Childress is, and at all pertinent times was, a citizen of the United States and resident of Tipton County, Tennessee.

7. Lee Riley is, and at all pertinent times was, Director and Operations Manager of Animal Control and an employee of Tipton County. She may be served with process at the Tipton County Animal Shelter, located at 8621 Highway 51 South, Brighton, Tennessee 38011.

8. Thomas Chapman was at all pertinent times an Animal Control officer and an employee of Tipton County; he has left that employment since the events described below. He may

be served with process at his residence, located at 1388 Munford Giltedge Road, Munford, Tennessee 38058.

9.      Plaintiffs also sue the Government of Tipton County, Tennessee (the "County"), a political subdivision organized and existing under and by virtue of the laws of Tennessee, as a "person" subject to liability under Section 1983 and *Monell*. It may be served with process through the office and person of the County Executive, Jeff Huffman, at 103 East Pleasant Avenue, Covington, Tennessee 38109.

10.     To the extent Plaintiffs state claims against either individual Defendant in that person's official capacity, such claims sound against the County as an entity and do not represent separate claims.

11.     The County also stands subject to liability under the GTLA for certain negligent acts and omissions of its employees.

### III.
### GENERAL ALLEGATIONS

12.     Plaintiffs are animal lovers and devoted pet owners. At all pertinent times, they owned two dogs—a Standard Poodle named Cruella and a Doberman named Mazikeen—which they kept and cared for on their private real property located at 297 McCullough Circle in Munford, Tennessee 38058 (the "Childress Property").

13.     Mazikeen, the Doberman, was a registered service dog trained to assist Mr. Chapman, a diabetic.

14.     The fur of Cruella, the Poodle, had been professionally groomed into cords. Her coat was not matted or unkempt at any time prior to her seizure by Animal Control.

3

15.    Ms. Lombardo and Mr. Childress housed Mazikeen and Cruella in a spacious, outdoor kennel that fully complied with the statutory requirements enumerated at Tennessee Code Annotated section 39-14-202(a)(2)(B)(ii)(*a*).[1]

16.    Animal Control, a division of the County, operated the Tipton County Animal Shelter and was charged with, among other things, seizing and holding stray dogs running at large and enforcing animal-welfare regulations.

17.    At all pertinent times, Defendant Thomas Chapman took direction from his superior at Animal Control, Lee Riley, who from time to time directed him to seize certain dogs from their owners' property. Such seizures were unlawful but apparently authorized by County policy, as discussed more fully below.

18.    On June 29, 2023, a Ring ™ Camera inside of a Covington tattoo shop recorded Mr. Chapman talking to a certain Kelly B., a shop employee with whom Mr. Chapman was having an extramarital affair at the time.[2] During this recorded conversation, Kelly B. asked Chapman to steal a "well trained" dog for her. Chapman responded that would not be a problem and that he had previously stolen a dog from "a black guy."

19.    Cruella and Mazikeen were both exceptionally well trained dogs.

20.    Exactly one week after the dog-stealing conversation above, on July 6, 2024, Mr. Chapman entered onto the Childress Property. He drove an Animal Control truck and represented to Ms. Lombardo that he came in his capacity as Animal Control officer.

21.    Mr. Chapman told Ms. Lombardo that the neighbors to the Childress Property had complained to the County about Mazikeen and Cruella and reported the dogs had run onto their

---

[1] These requirements tool effect on July 1, 2023.

[2] Plaintiffs own the tattoo shop and are in possession of the camera footage described.

property. As a result of that report, Mr. Chapman said, he had instructions to seize both dogs and take them to the Tipton County Animal Shelter. When Ms. Lombardo pressed him for more of an explanation, Mr. Chapman responded that the directive came "from way above my paygrade." He told her that he did not personally agree with the directive to seize the dogs, but the seizure was not his decision, and Ms .Chapman  would have to make her case to a Tipton County Judge.

22.	Another Ring™ Camera recorded the exchange above, and Plaintiffs have the footage.

23.	Mr. Chapman removed Mazikeen and Cruella from their spacious, outdoor kennel, loaded them into the Animal Control truck, and took them to the comparably cramped, crowded, and indoor holding facilities at the Tipton County Animal Shelter.

24.	With help from an attorney friend and a few calls to County officials, Ms. Lombardo and Mr. Childress were able to get Mazikeen released in a matter of hours. The quick release owed to Mazikeen's status as a service dog. Ms. Riley and Animal Control refused to release Cruella, however.

25.	As pretext for continuing to hold Cruella, Ms. Riley accused Ms. Lombardo of neglecting the dog, claimed the Cruella's corded coat was matted, and accused Ms. Lombardo of starving Cruella despite the dog's well-nourished appearance.

26.	On July 12, 2023, Ms. Riley told Ms. Lombardo that she (Ms. Riley) "had [Cruella] sold up north" for $1500.00.

27.	On July 19, 2023, Ms. Riley swore out two Affidavits of Complaint in the Tipton County General Sessions Court.

28.      The first Affidavit of Complaint charged Ms. Lombardo with the misdemeanor offense of "Dogs running at large" in violation of Tennessee Code Annotated section 44-8-408.[3] It stated in pertinent part:

> TCAC received a complaint regarding 2 dogs running at large on July 5th 2023. The owner of the dogs is Lindsey Lombardo at 267 McCullough Circle. TCAC has had several complaints regarding the owners dogs running at large. The owner has paid a 100.00 fine to TCAC. The owner was advised on July 6th we would seize the dogs and be cited to court.
>
> Kennel fee is $12.00 per day.[4]

29.      The second Affidavit of Complaint charged Ms. Lombardo—incredibly—with the misdemeanor offense of "Animal cruelty and neglect" in violation of Tennessee Code Annotated section 39-14-202.[5] It stated in pertinent part:

> TCAC went to 267 McCullough Circle on July 6th, 23, regarding dogs running at large on 7.5.23. Owners of dogs is Lindsey Lombardo and Bryan Childress. The black and white poodle was extremely matted and appeared to be in poor condition. The dogs were being seized for running at large. We told the owner she could have a groomer come to the shelter to shave the dog or we would hire one to come, and they would be responsible for the bill plus daily Kennel fee until the court date. Cited for neglect on the Bl/white poodle.[6]

30.      Although Ms. Riley filled out both Affidavits of Complaint in her own hand—and initialed "LR" to indicate as much—she identified "Tommy Chapman" as the affiant for each.

31.      On August 8, 2023, Ms. Lombardo appeared in the Tipton County General Sessions Court for an appearance date regarding the two bogus dog-related citations, as well as a third

---

[3] **Exhibit A** (submitted herewith).

[4] *Id.*

[5] **Exhibit B** (submitted herewith).

[6] *Id.*

charge (also bogus) for allegedly filing a false police report.[7] Outside the courtroom, Ms. Riley

told Ms. Lombardo, "If you'll just relinquish the dog to me, I'll drop all charges."

32.    Taken together, the allegations in the preceding six paragraphs plausibly support

the inference that Ms. Riley caused criminal charges to be filed against Ms. Lombardo, then used

the prospect of criminal prosecution, to try to coerce Ms. Lombardo into giving up ownership of

Cruella so that Ms. Riley could sell the dog to a buyer for $1500.00.

33.    Ms. Lombardo did not "relinquish" Cruella for Ms. Riley to sell off. Instead, in

order to get Cruella back, she agreed to plead guilty to having allowed the dog to run at large, paid

a fifty-dollar fine, and paid $484.00 in "restitution." Ms. Lombardo also agreed to weekly

inspections of Mazikeen and Cruella on the Childress Property, to be conducted by Ms. Riley. The

charges for animal cruelty and neglect, as well as the charge for allegedly allowing Mazikeen to

run at large, were dropped.

34.    Ms. Riley gave Cruella back to Ms. Lombardo and Mr. Childress on August 9, 2023.

All told, Ms. Riley had unlawfully held Cruella in the Tipton County Animal Shelter for thirty-

four days.

35.    Ms. Riley did not bother to conduct any weekly inspections of Mazikeen and

Cruella on the Childress property—further evidence she never held any genuine concern for either

dog's well being.

**IV.**
**FEDERAL CAUSES OF ACTION**

36.    Plaintiffs reallege and incorporate the above allegations as if fully set forth under

each count below.

---

[7] Ms. Lombardo anticipates amending her pleading at a later date to set forth the details of this
third, somewhat related charge.

**A.     *Count One:   Individual liability under 42 U.S.C. § 1983—Illegal seizure.*
(*against Thomas Chapman*)**

37.     The allegations above plausibly support the inference that Mr. Chapman seized Mazikeen and Cruella with the intention of giving one or both dogs to his then paramour, Kelly B.

38.     Regardless of motive, Mr. Chapman seized Mazikeen and Cruella intentionally, with no warrant or writ, and without a statutory basis for seizing the dog.

39.     Tennessee vests local-government actors with limited police powers to seize dogs and cats without judicial process under certain circumstances.

40.     State statute authorizes counties, through their local legislative bodies, to "license and regulate dogs and cats" and to "regulate, capture, impound and dispose of *stray* dogs, *stray* cats, and other *stray* animals." Tenn. Code Ann. § 5-1-120 (emphasis added).

41.     Statute likewise authorizes state-chartered municipalities to "impound" animals "*going at large* . . . within the municipality." Tenn. Code Ann. § 6-2-201 (emphasis added); *see also* §§ 6-19-101(31), 6-33-101 (like authorization for incorporated cities); § 7-1-102 (same for consolidated county governments).

42.     In addition to the above, a local government may "authorize . . . an animal control agency to seize and take into custody any dog *found* trespassing *on the premises of another*." Tenn. Code Ann. § 44-8-408(j)(1) (emphasis added).

43.     Outside the limited authority granted above, Tennessee does not authorize the seizure of a dog without judicial process.

44.     When Mr. Chapman seized Mazikeen and Cruella on July 6, 2023, neither dog qualified as "stray," "running at large," or "trespassing on the property of another." His seizure of those dogs was therefore an unlawful seizure and taking of Plaintiffs' personal property, in violation of the Fourth and Fourteenth Amendments, respectively.

45.    Mr. Chapman acted intentionally, under color of state law, and in violation of clearly established constitutional rights.

46.    Mr. Chapman's seizure and taking of Mazikeen and Cruella caused Plaintiffs grievous injury they would not otherwise have suffered, including emotional distress, monetary damages, and presumed damages for the violations of their constitutional rights.

47.    Mr. Chapman's conduct alleged above was sufficiently egregious to entitle Plaintiffs to an award of punitive damages.

**B.    *Count Two:    Individual liability under 42 U.S.C. § 1983—Illegal seizure.***
***(against Lee Riley)***

48.    In the alternative to Plaintiffs' allegation that Mr. Chapman took Mazikeen and Cruella for Kelly B., the allegations above plausibly support the inference that Mr. Chapman seized Mazikeen and Cruella because Ms. Riley directed him to do so.

49.    The allegations above also support the inference that, sometime prior to July 12, 2023, Ms. Riley made arrangements to sell Cruella to a buyer for $1500.00, then brought criminal charges against Ms. Lombardo in an effort to coerce Ms. Lombardo into giving up ownership of her beloved dog.

50.    No person familiar with dogs could have reasonably believed in July 2023 that Cruella's coat was matted from neglect (rather than corded by a groomer) or that the dog was underfed. Ms. Riley's allegations of abuse and neglect were pure fabrication—pretense for taking both dogs and for holding onto Cruella.

51.    When Ms. Riley instructed Mr. Chapman to seize Mazikeen and Cruella on July 6, 2023, neither dog qualified as "stray," "running at large," or "trespassing on the property of another." Mr. Chapman's seizure of those dogs, at her direction, was therefore an unlawful seizure

and taking of Plaintiffs' personal property, in violation of the Fourth and Fourteenth Amendments, respectively.

52.     In instructing Mr. Chapman to seize Plaintiffs' dogs, Ms. Riley acted intentionally and in violation of clearly established constitutional rights.

53.     Ms. Riley's seizure and taking of Mazikeen and Cruella, and her holding of Cruella for thirty-four days, caused Plaintiffs grievous injury they would not otherwise have suffered, including emotional distress, monetary damages, and presumed damages for the violations of their constitutional rights.

54.     Ms. Riley's conduct alleged above was sufficiently egregious to entitle Plaintiffs to an award of punitive damages.

### C.     *Count Three:* **Monell** *liability under 42 U.S.C. § 1983—Official policy* **(against the County)**

55.     The County's official Animal Control policy, the so-called Tipton County Animal Control Act (the "Act"), purports at Section 14 to authorize animal control officers "to capture, confine and or impound all dogs and cats and other animals designated by the director found in the county whose owners are in violation of this chapter."[8] That language is less than clear, because the Act does not contain chapters. But the following language, also from Section 14, makes clear that "enforcement officers" have authority, per County policy, to seize dogs they personally deem to be in violation of any provision of the Act:

> Impoundment of dogs and cats or other designated animals found to be in violation of this chapter by such enforcement officers is hereby authorized for violation of the registration provisions of this chapter, violation of the vaccination previsions, or any other part of these provisions.  The owner of any animal impounded by animal control shall be required to remit an impoundment fee . . . per day of impoundment.[9]

---

[8] **Exhibit C** (submitted herewith).

[9] *Id.*

56.     On its face, the language of Section 14 of the Act purports to authorize the seizure, without judicial process or exigent circumstances justifying immediate seizure, of pet dogs and cats found on their owner's private property.

57.     By authorizing such sweeping "impoundment authority," Section 14 of the Act goes beyond the seizure authority granted by Tennessee statute and violates the Fourth and Fourteenth Amendments to the Constitution.

58.     Notwithstanding the malicious intent of one or both of the individual Defendants, they would not have seized Plaintiffs' dogs but for their apparent authority under the Act to seize dogs found on their owners' property based on unsubstantiated reports of those dogs running at large.

59.     The Act itself, a piece of official County policy, was thus a moving force of the unlawful seizure of Plaintiffs' dogs and caused them grievous injury they would not otherwise have suffered, including emotional distress, monetary damages, and presumed damages for the violation of their constitutional rights.

## V.
## PENDANT STATE LAW CLAIMS

60.     Plaintiffs reallege and incorporate the above allegations as if fully set forth under each count below.

### D.     *Count Four:  Conversion at common law*
### (*against Lee Riley*)

61.     By holding Plaintiffs' personal property, namely Cruella, at the Tipton County Animal Shelter for thirty-four days, Ms. Riley exercised dominion over Plaintiffs's property by excluding or denying Plaintiffs' rights, as the dog's lawful owners, to possession and control of Cruella.

11

62.     Ms. Riley acted intentionally.

63.     As a result of Ms. Riley's conversion of Cruella, Plaintiffs suffered grievous injury that would not otherwise have occurred, including emotional distress and monetary damages.

64.     Ms. Riley's conversion of Cruella was sufficiently egregious to entitle Plaintiffs to an award of punitive damages.

### E.  Count Five:   Vicarious liability under the GTLA
### (against the County)

65.     The County stands vicariously liable under the GTLA for injuries arising from the negligent acts or omissions of its employees. Tenn. Code Ann. § 29-20-205.

66.     During the thirty-four days during which Ms. Riley held Cruella at the Tipton County Animal Shelter, one or more other County employees negligently failed to intervene or take other action to return Cruella to Plaintiffs.

67.     That negligence by County employees allowed Ms. Riley to convert Plaintiffs' property, causing Plaintiffs grievous injury that would not otherwise have occurred, including emotional distress and monetary damages.

### VIII.
### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand the following relief as of right:

A.     That process issue and Defendants, having waived service of process or been duly served, be required to answer or otherwise respond to this Complaint in the time and manner provided by law;

B.     That a jury of eight or more persons be empaneled to hear and decide all jury-triable issues raised above or as may subsequently arise during the action or emerge from discovery;

C.     That, upon in a verdict, Judgement be entered in Plaintiffs' favor, over and against Defendants, for which execution may issue;

12

D.      That such judgment award compensatory damages in an amount to be determined according to the proof;

E.      That such judgment award punitive damages against any individual Defendant whose conduct the jury deems sufficiently egregious, in an amount to be assessed according to the proof;

F.      That, in addition to damages awarded, Plaintiffs be awarded all costs incurred in prosecuting this action, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

G.      For such other and further relief as may be appropriate under the circumstances.

Dated July 8, 2024.

Respectfully submitted,
**APPERSON CRUMP, PLC**

*/s/ Jacob Webster Brown*
Jacob Webster Brown (TN 36404)
William R. Faulk (TN 39566)
Sara Katherine McKinney (TN 40900)
6000 Poplar Avenue, Suite 150
Memphis, Tennessee 38119
(901) 756-6300 (Office)
(901) 757-1296 (Fax)
*jbrown@appersoncrump.com*
*wfaulk@appersoncrump.com*
*smckinney@appersoncrump.com*

13